UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JANICE C. CARNER,

                       Plaintiff,

   -against-                                             3:05-CV-530
                                                                   (LEK/GHL)
COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.
_____

## DECISION AND ORDER

**I.    BACKGROUND**

    **A.    Procedural History**

Plaintiff Janice C. Carner ("Plaintiff") filed an application for Disability Insurance Benefits ("DIB") on January 30, 2003. Administrative Transcript ("AT") 37-39 (Dkt. No. 3). The application was denied initially on May 2, 2003. AT 30-34. A request was made for a hearing. AT 35-36. A hearing was held before an Administrative Law Judge ("ALJ") on May 20, 2004. AT 129-41. In a decision dated September 10, 2004, the ALJ found that Plaintiff was not disabled. AT 15-24. The Appeals Council denied Plaintiff's request for review on March 10, 2005. AT 4-7. Plaintiff commenced this action on April 29, 2005 pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner's final decision. Compl. (Dkt. No. 1).

    **B.    Contentions**

Plaintiff makes the following claims:

    (1) The residual functional capacity ("RFC") determination was improper. Plntf's Brief (Dkt. No. 4) at 5-7.

    (2) The opinion of the treating physician was improperly discounted. Plntf's Brief at 7-8.

    (3) Plaintiff's allegations of disabling pain were improperly discounted. Plntf's Brief at 9-

10.

(4) The ALJ improperly failed to use a vocational expert as dictated by step five of the sequential evaluation process. Plntf's Brief at 11-12.

(5) No purpose would be served by remanding the matter. Plntf's Brief at 12.

Defendant argues that the Commissioner's determination is supported by substantial evidence in the record, and must be affirmed. Deft's Brief (Dkt. No. 5).

**C.     Facts**

Plaintiff was fifty-six years old at the time of the hearing. AT 133. Plaintiff obtained her college degree. AT 51, 133. Plaintiff last worked as a program director at a day care facility. AT 46, 135. She previously worked as a corporate trainer, advertising program coordinator, proof-reader, and aerobics instructor. AT 46. Plaintiff last worked on June 28, 2002. AT 45. She alleges disability due to Crohn disease.[1] Id.

In 1993, an ultrasound of Plaintiff's gallbladder showed multiple stones. AT 77, 78. Thereafter, Plaintiff underwent a gallbladder surgery. See AT 77-79.

On August 18, 1999, Plaintiff was admitted to Lourdes Hospital with abdominal pain. AT 79. She was diagnosed as suffering from, inter alia, acute appendicitis and Crohn disease of the appendix. AT 79-80. A laparoscopic appendectomy was attempted, but the surgery was "converted to an open approach." AT 81. A pathology report showed that changes in the appendix "are most consistent with Crohn's disease." AT 89.

On May 27, 2003, Plaintiff saw Mark Epstein, M.D. AT 113-17, 119. She complained of experiencing, inter alia, diarrhea, arthritis, joints problems, and depression. AT 116-17. Dr. Epstein

---

[1] Crohn disease, or Crohn's disease, one of the principal forms of inflammatory bowel disease, is a chronic granulomatous disease of the gastrointestinal tract of unknown etiology. Dorland's Illustrated Medical Dictionary 539 (31st ed. 2007). It can involve any part of the tract, but most often is found in the terminal ileum. Id. Characteristics include scarring and thickening of the bowel wall that frequently leads to intestinal obstruction, abscesses, and fistula formation. Id.

2

diagnosed Plaintiff as suffering from inflammatory bowel disease the extent of which is "unknown." AT 113.  Dr. Epstein referred Plaintiff for blood work and other diagnostic testing.  AT 113-17, 119.  X-rays of Plaintiff's small bowel showed no evidence of thickening or inflammation, but Dr. Epstein noted "some scarring" which was "probably" due to Plaintiff's appendectomy.  AT 111.  On June 27, 2003, Dr. Epstein suggested that Plaintiff undergo a colonoscopy.  AT 118.

On August 2, 2004, Dr. Epstein stated in a questionnaire prepared by Plaintiff's counsel that Plaintiff's diagnoses included severe irritable bowel syndrome, depression, and a "prior diagnosis" of Crohn Disease.  AT 123.  He noted that Plaintiff was currently being treated with Dicyclomine.[2]  Id.  He also noted that Plaintiff's symptoms include reclusiveness, agoraphobia, diarrhea, emotional lability, insomnia, and refractory obesity.  AT 124.  He opined that Plaintiff is unable to engage in substantial gainful employment.  Id.

On October 31, 2004, Dr. Epstein completed the questionnaire again, indicating this time that Plaintiff's diagnoses included depression, extreme anxiety disorder, personality disorder, social anxiety disorder, and irritable bowel syndrome.  AT 126.  He noted that Plaintiff was receiving no treatment, adding that "depression symptoms of lability panic are controlled if she avoids out-of-home social/work activity."  Id.  He described Plaintiff's symptoms as bowel urgency and claustrophobia, with the latter related to her bowel urgency.  AT 127.  He noted that she was last seen on October 19, 2004.  Id.  With regard to whether Plaintiff is able to engage in substantial gainful employment, Dr. Epstein opined, "I do not believe so."  Id.

In the interim, on April 10, 2003, Plaintiff underwent an internal medicine examination at the request of the agency by Mark Henderson, D.O.  AT 92-96.  Dr. Henderson noted Plaintiff's complaints of daily loose bowel movements, frequent abdominal cramping, fatigue, low grade

---

[2] Dicyclomine, or Bentyl, is prescribed for the treatment of functional bowel/irritable bowel syndrome.  The PDR Pocket Guide to Prescription Drugs 207 (8th ed. 2008).

3

fevers, and joint pains. AT 92. He noted that she denied taking medication for Crohn disease at the time, and that Plaintiff was taking only over-the-counter Metamucil. Id. Dr. Henderson diagnosed Plaintiff as suffering from a history of Crohn disease; history of low resting heart rate; evidence of degenerative joint disease at both knees; left shoulder pain; obesity; elevated blood pressure; and history of toe pain. AT 95. He opined that Plaintiff has a mild restriction for heavy lifting and carrying, prolonged standing, prolonged walking, squatting, and kneeling. Id.

The record also contains a Physical RFC Assessment completed by M. DeBonis, a disability analyst, on April 29, 2003. AT 97-102. It was indicated that Plaintiff is able to lift and carry twenty pounds occasionally and ten pounds frequently; and stand, walk, or sit about six hours in an eight-hour workday. AT 98. It was also indicated that Plaintiff has some postural limitations. AT 99.

## II.     DISCUSSION

### A.     Disability Standard

To be considered disabled, a plaintiff seeking DIB or SSI benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is
> not only unable to do his previous work but cannot, considering his age, education,
> and work experience, engage in any other kind of substantial gainful work which
> exists in the national economy, regardless of whether such work exists in the
> immediate area in which he lives, or whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. Berry, 675 F.2d at 467 (citations omitted).

In this case, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. AT 19. At the second step, the ALJ determined that Plaintiff's irritable bowel syndrome and degenerative joint disease of the knees and left shoulder are severe impairments. Id. At the third step, the ALJ concluded that those impairments neither met nor equaled any impairment listed in Appendix 1 of the regulations. AT 20. At the fourth step, the ALJ found that Plaintiff retains the RFC to perform a limited range of light work. AT 22. The ALJ then concluded that Plaintiff could perform her past relevant work as a day care program director. AT 23. The ALJ therefore concluded that Plaintiff was not disabled. Id.

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing, inter alia, Johnson v. Bowen,

817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  Johnson, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Williams on behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams, 859 F.2d at 258 (citations omitted).  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972); see also Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212 (1983).

### C.     RFC and Treating Physician Rule

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations which go beyond the symptoms. Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, D.J.); see 20 C.F.R. §§ 404.1545, 416.945. "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations." Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (citation omitted). In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding a claimant's capabilities. Martone, 70 F. Supp. 2d at 150. RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy. New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see 20 C.F.R. §§ 404.1560, 416.960.

In rendering an RFC determination, the ALJ must consider, inter alia, objective medical facts, diagnoses, and medical opinions based on such facts. 20 C.F.R. §§ 404.1545, 416.945; see Martone, 70 F. Supp. 2d at 150 (citation omitted). Evaluation of the medical opinion of a claimant's treating doctor is governed by the "treating physician rule." 20 C.F.R. § 404.1527(d)(2). As specified in the regulations, the opinion of the claimant's treating doctor is considered controlling as to the nature and severity of a claimant's impairment, provided it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . . ." 20 C.F.R. § 404.1527(d)(2); see also Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998). A treating physician's opinion is binding unless contradicted by other medical evidence or by "overwhelmingly compelling" non-medical evidence. Brown v. Apfel, 991 F. Supp. 166, 171 (W.D.N.Y. 1998) (citation omitted).

When substantial evidence in the record conflicts with a treating physician's opinion, that opinion will not be given controlling weight. Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). However, under the applicable regulations, the Administration is required to explain the weight it gives to the opinions of a treating physician. See 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"); see also Social Security Ruling ("SSR") 96-2P, 1996 WL 374188, at *5 (SSA July 2, 1996) (requiring that an ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight . . . [given] to the treating source's medical opinion and the reasons for that weight"). In determining the authoritative value of a non-controlling medical opinion, the ALJ must consider: (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist; and (5) any other relevant factors. 20 C.F.R. § 404.1527(d); see also Schaal, 134 F.3d at 503. Omission of this analysis is considered failure to apply the proper legal standard, and is grounds for reversal of the Commissioner's determination. Schaal, 134 F.3d at 505.

In this case, the ALJ determined that Plaintiff could perform a limited range of light work.[3] AT 22. The ALJ limited the range of work by finding that Plaintiff is unable to engage in more than occasional kneeling or crawling due to her knee pain. Id.

Plaintiff argues that in making this determination, the ALJ improperly discounted the opinion of her treating physician, Dr. Epstein. Dkt. No. 4 at 5-8. The ALJ afforded no weight to

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

8

Dr. Epstein's opinion. AT 22. The ALJ explained as follows:

> Although [Plaintiff's] representative submitted a medical statement from Dr. Epstein dated August 2004, she had received no treatment since June 2003 (Ex. 6F). Thus, Dr. Epstein can hardly be considered a 'treating source' within the meaning of Social Security Ruling 96-2p. Further, the notes from his May and June 2003 consultations do not support his August 2004 conclusions. Therefore, no weight is given to the medical source opinion of Dr. Epstein (20 CFR 404.1527(d)).

AT 22. For the following reasons, the Court finds that the ALJ's assessment of Dr. Epstein's opinion is not supported by substantial evidence.

Initially, the Court notes that the record suggests that Dr. Epstein is a treating source. Progress notes indicate that Plaintiff saw Dr. Epstein on more than one occasion between May and June of 2003. AT 103-27. During that time, Dr. Epstein diagnosed Plaintiff as suffering from various conditions, prescribed medications, and referred Plaintiff for diagnostic testing, including blood work and x-rays. Id. Further, Dr. Epstein's October 2004 assessment, which was considered by the Appeals Council, AT 7, indicates that Plaintiff was seen on October 19, 2004. AT 127. Thus, the record suggests that Dr. Epstein is a treating source.[4] See 20 C.F.R. §§ 404.1502, 416.902 ("Treating source" is defined as one's own physician, psychologist, or other acceptable medical source who provides, or has provided, medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the patient/plaintiff/claimant). Accordingly, the matter must be remanded for a proper evaluation of Dr. Epstein's opinion. On remand, any missing treatment records from Dr. Epstein, such as any progress notes from the October 19, 2004 office visit, must be obtained. 20 C.F.R. § 404.1512(e)(1) (providing that additional evidence or clarification from a medical source will be sought "when the report from your medical source contains a conflict or ambiguity that must be resolved, [or] the report does not contain all the necessary information"); see also Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000) (noting that remand is appropriate where there

---

[4] Defendant himself identifies Dr. Epstein as "[P]laintiff's treating physician." Dkt. No. 5 at 11.

are gaps in the record or further development of the evidence is needed).

The Court also notes that the ALJ found that Dr. Henderson's opinion was entitled to "significant weight" because "it is fully supported by the substantial evidence of record." AT 21. However, the ALJ failed to explain how Dr. Henderson's opinion was supported by "substantial evidence of record." Moreover, in evaluating Dr. Henderson's opinion, the ALJ reviewed his findings, but failed to discuss all of the factors set forth in 20 C.F.R. § 404.1527(d). See 20 C.F.R. § 404.1527(d) ("Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the . . . factors in deciding the weight we give to any medical opinion").

In light of the foregoing, the Court is unable to conclude that the RFC determination is supported by substantial evidence.

### D. Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. See 20 C.F.R. §§ 404.1529, 416.929; see also Foster v. Callahan, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence alone

establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work.  Id. §§ 404.1529(c), 416.929(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  Id. §§ 404.1529(c)(3), 416.929(c)(3).

In his decision, the ALJ found that Plaintiff's complaints and testimony "are only partially credible," noting the frequency and intensity of Plaintiff's symptoms and that Plaintiff's complaints are inconsistent "with the clinical findings and other substantial evidence of record."  AT 21.  He noted that Plaintiff "sought only minimal medical treatment . . . and continues to engage in a wide range of daily activities that are inconsistent with disabling pain."  Id.  The ALJ then pointed out that Plaintiff's "testimony was very vague about why she stopped working in June 2002."  Id. Lastly, the ALJ then described the findings made by Dr. Henderson and concluded that his opinion was entitled to significant weight.  Id.

While the ALJ discussed the frequency and intensity of Plaintiff's symptoms, and daily activities as reported by Dr. Henderson, the ALJ failed to discuss the other factors set forth in the regulations.  For instance, the ALJ failed to discuss any precipitating and aggravating factors.

See 20 C.F.R. § 404.1529(c)(3)(iii).  Plaintiff testified that "eating is the worst" aggravating factor. AT 137.  The ALJ also failed to discuss the type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms.  See 20 C.F.R. § 404.1529(c)(3)(iv).  While the ALJ noted that Plaintiff reported to Dr. Henderson that she takes only over-the-counter Metamucil, AT 21, see AT 92, Plaintiff was subsequently prescribed Dicyclomine by Dr. Epstein, which was noted in Dr. Epstein's August 2004 assessment.  AT 123.  The ALJ also failed to discuss any measures Plaintiff uses to relieve pain or symptoms.  See 20 C.F.R. § 404.1529(c)(3)(vi).  At the hearing, Plaintiff testified that upon experiencing bouts of abdominal pain and diarrhea, Plaintiff must immediately go to the bathroom regardless of her location.  AT 137-38.  She also stated that she sleeps "downstairs now, just to be near the bathroom."  AT 139.  She further indicated that she is unable to sleep "flat," therefore she must sleep in a recliner.  AT 65.

In light of the foregoing, the ALJ's determination of Plaintiff's credibility is not supported by substantial evidence.  The ALJ failed to discuss all of the relevant factors set forth in the regulations.  Therefore, remand is required for a proper evaluation of Plaintiff's credibility.

### E.     Vocational Expert Testimony

At step five of the sequential evaluation process, the burden shifts to the Commissioner to establish that the plaintiff "retains a residual functional capacity to perform . . . substantial gainful work which exists in the national economy."  Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986). Ordinarily, the ALJ need not consult a vocational expert, and may satisfy this burden "by resorting to the applicable medical vocational guidelines (the grids)."  Id. (citing 20 C.F.R. Pt. 404, Subpt. P, App.2).  The grids, however, do not provide the exclusive framework for making a disability determination if a claimant suffers from non-exertional impairments that "significantly limit the range of work permitted by exertional limitations."  Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)

(quoting Bapp, 802 F.2d at 604-05 (citation omitted)).  Work capacity is "significantly diminished" if there is a loss of work capacity that narrows the possible range of work available and deprives the claimant of a meaningful employment opportunity.  Bapp, 802 F.2d at 605.  Thus, the "mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines."  Id. at 603.

Plaintiff argues that "a vocational expert was not only warranted but mandated by law had the Judge reached [S]tep [F]ive of the process."  Dkt. No. 4 at 11.  However, in this case, the ALJ's analysis ended at Step Four of the sequential evaluation process when he determined that Plaintiff could perform her past relevant work.  AT 23.  On remand, the ALJ shall obtain the opinion of a vocational expert if Plaintiff's nonexertional limitations present significant limitations.  See Bapp, 802 F.2d at 605-06 (holding that if a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations" the application of the grids is inappropriate).

### III.  CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that the case be **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this Decision and Order, and it is further

**ORDERED**, that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**, and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

Dated: February 11, 2008
       Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge